PATRICK LENNON, RESPONDENT, v. THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, APPELLANT.

*Negligence — injury of a boy eight years old by an engine — an attempt to cross in front of a train — a contradictory statement — credibility of a witness.*

An action was brought by a father to recover damages for injuries sustained by his son, a boy eight years old, who was injured in crossing the tracks of a railroad, in the center of a city street 100 feet wide, by an engine moving rapidly and, as he alleged, not ringing a bell, the boy testified that, at the curb-stone,

before starting across the street, he looked and could see a distance of fifty-five feet; that he listened and saw and heard nothing; that he ran a distance of twenty-five feet, and had about crossed the second rail of the track when he was struck; that at the time there was a light rain, and the atmosphere was foggy. It did not appear that he looked or listened after starting to run.

The railroad company asked the court to charge that if the boy looked and saw the train, and started to cross ahead of it, the father could not recover, whether the boy started to cross, taking the risk of crossing in front of the train, or omitted to be governed by the fact that he had seen it, which the court refused to charge.

Upon an appeal from a verdict in favor of the father:

*Held*, that the defendant was entitled to the charge requested.

It appeared that the boy had before the trial gone to the office of the attorney for the defendant, and had there made a statement which had been taken down by a stenographer. His statement of the facts made upon the trial differed from this, and his attention was called to the discrepancy.

*Held*, that the defendant was entitled to a charge that if the jury believed the boy had before the trial made another statement of the facts, they must take this into consideration in determining the credit to be given to his testimony.

*Semble*, that it was negligence in the boy not to look and listen when he started to run across the tracks.

APPEAL by the defendant, the New York Central and Hudson River Railroad Company, from an order of the Supreme Court, entered, after a trial at the New York Circuit before the court and a jury, in the office of the clerk of the city and county of New York on the 22d day of December, 1891, denying a motion made upon the minutes to set aside a verdict for the plaintiff for $5,000 and for a new trial.

*D. W. Tears*, for the appellant.

*L. E. Chittenden*, for the respondent.

O'BRIEN, J.:

This action was brought by plaintiff to recover damages for the loss of services of his infant son by reason of personal injuries alleged to have been negligently inflicted by defendant at or near Forty-seventh street and Eleventh avenue, in the city of New York, on May 15, 1886.

Plaintiff's evidence tended to show that he resided on the westerly side of Eleventh avenue, between Forty-eight and Forty-ninth streets; that the avenue at this point, and north and south of it, is

100 feet wide and straight, and defendant's trains run in its center on four rails at grade.   It is paved like a city street ; on both sides are tenement-houses, and streets  sixty feet wide cross it, upon some of which streets are street railroad tracks which  cross  the  tracks of the defendant's road at grade.   The son, who resided with plaintiff, was eight years old at the time of the accident, healthy and of ordinary intelligence, and for four years prior to the accident had crossed the avenue and  defendant's tracks  three  or  four times daily going to and from school, and had seen a great many of defendant's trains going up and down the avenue.   The  son testified that, on the day mentioned, in  going  to  call  a  doctor, he crossed Eleventh avenue, going down the westerly side to Forty-seventh street, crossed Forty-seventh  street, and  reached  curb-stone  preparatory  to  crossing the avenue at a point in front of a  grocery store fifteen feet southerly from  Forty-seventh street crossing.   " At curb-stone he tarried a. moment, looked up and down the avenue, listened, saw and heard nothing, and then started to go across tracks.   He ran straight across for twenty-five feet, and  had  about cleared the second rail he came to when he was struck by one of defendant's locomotives south bound, which was running down grade at a speed. faster than a horse can trot, without ringing a bell or blowing a whistle."   Plaintiff also introduced  evidence  tending  to  show that on that day there was a light rain, and that at the time of  the  accident the atmosphere was foggy or hazy.   As to the distance that the  boy could see up the avenue, he testified that his vision was unobstructed for a distance northward of about fifty-five  feet, which would be about opposite a junk shop, where there were  standing  about ten small two-wheeled wagons, such as are used by junk dealers.

On the part of the defendant the  evidence  tended to show that the injuries resulted from an attempt of the boy to board one of the cars of  the defendant's train while in motion down the avenue, after having been warned against the attempt.

The plaintiff, in  order  to  recover, was  bound to show not only that his son's injuries resulted from the negligence of the defendant, but also that the son himself was free from any negligence which contributed to the injuries.   As to the first, the  testimony adduced, tending to show that, though running through a public thoroughfare at  a  reasonably high rate of speed, no  bell  was  rung  or  whistle

sounded, would be sufficient to justify the submission of this question to the jury.

Upon the other proposition of establishing that his son was free from any negligence that contributed to his injuries the testimony was far from satisfactory; and, in view of the law as laid down in *Tucker* v. *New York Central and Hudson River Railroad Company* (124 N. Y., 309), a serious question was presented whether it was not the duty of the court to dismiss the complaint for failure to sustain the burden, with respect to this proposition, which was placed upon the plaintiff. In that case it was said: " The law requires a traveler before crossing a railroad track on a public highway to look and listen for the approach of trains. If he omit to do so and suffers injury while crossing he cannot recover because of such omission. That which it is his duty to do he  *  *  *  must in an action to recover for damages sustained prove was done, or at least must prove facts from which inference can reasonably be drawn that he performed his duty in that respect. It will not be presumed that he looked. It must be proven. The plaintiff attempted to meet these requirements by the evidence of a witness who testified that before the intestate crossed the track, in the doing of which he was struck by the locomotive and killed, he stopped in the center of the switch-track, eleven feet from the north rail of the track upon which the locomotive was running, and shifted the bag which he was carrying from one shoulder to the other, resting it upon the bumper of a car standing upon the track as he did so, and that at this time his face was turned in the direction of the approaching engine. He then passed on in a southerly direction for a distance of about fourteen feet when he was struck. The witness further testified that after changing the bag from one shoulder to the other he did not again turn his head to the left, as it would have been necessary for him to do in order to see the approaching locomotive. It is urged that, inasmuch as it appears that his face was turned in the direction from whence the locomotive came, that a jury could be permitted to find that he did look and thus observed that measure of care and caution which the situation imposed. We are unable to agree with that contention.  *  *  *  But if the inference was permissible that he looked at the moment of changing the bag, it does not meet the requirements of the case. He had still six tracks

to cross and was then eleven feet from the south rail of the first track.    To look then and not again, to go on from that point without observing the further precaution of watching for the approach of trains upon tracks almost constantly in use was not a proper observance of that care which it was his duty to exercise."    (Cases cited.)

In that case, which is in many other respects analogous to this, the reason assigned for not seeing the approaching train was the fact that it was windy and snowing ; while here the reason assigned is a hazy and foggy atmosphere.    The evidence here tended to show that the boy, while on the sidewalk and preparatory to crossing, looked up and down and listened for approaching trains.    Though we have the width of the avenue given as one hundred feet, the distance from the curb-stone to the most westerly track, which was the portion of the street traversed by the boy before reaching the first track is not given, but we know, from the circumstance that the defendant company had but two tracks of four rails which were placed in the center of the avenue, that this space was greater than eleven feet.

In the Tucker case, as we have seen, although there was evidence to show that when within eleven feet from the track the person injured looked, it was held that this was not a sufficient discharge of the obligation which requires of a traveler on the highway, before crossing a track, to look and listen for the approach of trains.    And to repeat what is stated in that case respecting what was done by the person injured when but eleven feet from the track, "to look then and not again    *    *    *    was not a proper observance of that care which it was his duty to exercise."

It is unnecessary, however, for us, in view of other exceptions taken to rulings made, which we regard as good, to place our reversal upon this ground.    But we have alluded to this feature of the case in order to emphasize one of the exceptions referred to which the defendant urges upon this appeal.    The learned trial judge refused to charge the defendant's seventh request : "That it was the duty of the boy William Lennon to look in the direction from which a train was to be expected on the track before entering upon the track ; and if by so looking he could have seen the train and stopped, and avoided the accident, and he omitted so to look, the plaintiff cannot recover."

It is true that the court had charged that: "It was the duty of William Lennon, when he was about to cross the track, to take means of ascertaining whether there was or was not a train approaching on that track, and if he neglected to take some means, the means that you would expect from and of a child of his age, and if he was injured by reason of his neglect to take such means, then his father cannot recover in this action. He says he did take such means. He says that, as he was standing on the track a short distance south of the southerly line of Forty-sixth street and Eleventh avenue, he looked north and south to see whether there was any train approaching, and that he saw no train approaching. He says that after he left the sidewalk, and before he reached the track, he listened and heard no ringing of the bell."

It will thus be seen that the defendant's attorney, by exception to the charge, again raised the point presented by the seventh request, that the looking and listening on the sidewalk, and thereafter neglecting to again do both while traversing the space between the sidewalk and the rail, was not a compliance with the duty resting upon him.

Were this the only refusal to charge requests to which the defendant was entitled we should not disturb the verdict, because, had the court's attention been more specifically directed to the distinction which the defendant's counsel sought to make between the broader proposition contained in his request as to the necessity of using all his senses, as contrasted with the more limited exposition of the law given by the court in its charge, that the boy's duty might be discharged by listening simply, it would, no doubt, have been corrected. The defendant, however, asked the court to charge that: "If the boy, William Lennon, looked and saw the train and started to cross ahead of it, the plaintiff cannot recover, whether the boy, William Lennon, started to cross, taking the risk of crossing in front of the train, or omitted to be governed by the fact that he had seen it." This was refused. As there was no passage in the charge covering the proposition embraced in this request, and as, in one view to be taken of the evidence, it was one which the jury might consider, the defendant was entitled to have them instructed upon this point, and the refusal so to instruct them, we think, was error.

In addition to this, it appears that during the trial evidence was offered to show that, in material respects, the testimony of the boy

given upon this trial was different from his version upon the occasion of his visit some time prior thereto to the office of the defendant's attorney, where it was taken by a stenographer and used upon the trial.   The boy's attention was called to the discrepancy thus appearing between his two statements relating and leading up to his injuries, and he was permitted to explain, which in the main resulted in his denial of the making of the first statement in the office of defendant's attorney.   In his charge the court in no way referred to this circumstance, and the defendant thereupon requested the court to charge :

"That, if the jury believe that the boy, William Lennon, has heretofore made a statement in conflict with his testimony as to material features of the accident and its circumstances, they must take that into consideration in determining what credit they will give to his testimony, and have the right to disregard his testimony altogether."   The court made answer : "I refuse to charge, except as I have charged."   As there was no reference or allusion in the charge in any way to the discrepancy thus appearing, and as the request contained a correct statement of the effect which the jury should give to such discrepancies as bearing upon the credibility of the witness, there was no reasonable ground for refusal, and, the defendant having the right thereto, such refusal was error.

Besides these, many questions in respect to the admissibility of evidence have been pressed upon our attention, but in view of what we regard as errors in the court's presentation of the case to the jury, it is unnecessary to consider them, the latter, in our opinion, requiring that the judgment should be reversed and a new trial granted, with costs to appellant to abide the event.

VAN BRUNT, P. J. :

I am of the opinion that complaint should have been dismissed. I concur in reversal and new trial.

Judgment reversed and new trial ordered, with costs to the appellant to abide event.